



FILED
Jun 06 2025, 9:31 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Eliezer Areche,

*Appellant-Plaintiff*

v.

Indianapolis Department of Public Works, City of Indianapolis, United States Postal Service, *et al.*,

*Appellees-Defendants*

---

June 6, 2025

Court of Appeals Case No.
24A-CT-2672

Appeal from the Marion Superior Court

The Honorable Ian L. Stewart, Magistrate

Trial Court Cause No.
49D01-2309-CT-37083

---

**Opinion by Judge Tavitas**
Judge DeBoer concurs.

Judge Scheele dissents with separate opinion.

**Tavitas, Judge.**

[1] Eliezer Areche was riding an electric foot scooter on a sidewalk in Indianapolis when he hit a hole, fell, and was injured. Areche filed a negligence action against several defendants, including the City of Indianapolis ("the City"). The City moved for summary judgment and argued that Areche could not recover because he was negligent per se for violating a city ordinance that prohibited electric foot scooters from being operated on sidewalks and was, therefore, contributorily negligent. The trial court agreed and granted the City's motion for summary judgment.

[2] Areche appeals and claims that the trial court erred by granting the City's motion for summary judgment because his violation of the ordinance did not constitute negligence per se and he was, therefore, not contributorily negligent. We conclude that Areche's ordinance violation did constitute negligence per se, and, because negligence claims against governmental entities are specifically exempted from the Comparative Fault Act, Areche's claim is barred by the common-law defense of contributory negligence. Accordingly, we affirm.

## Issue

[3] Areche presents one issue for our review, which we restate as whether the trial court erred by granting the City's motion for summary judgment on grounds

that Areche was negligent per se and, therefore, his negligence action against the City, which is exempt from the Comparative Fault Act, is barred by the common-law defense of contributory negligence.

## Facts[1]

[4] On June 22, 2022, Areche, who is a resident of Florida, was in Indianapolis attending an event at the Convention Center. While downtown, Areche used a Lime brand electric foot scooter ("electric scooter"). This was Areche's first time using an electric scooter. Areche saw other electric scooter operators riding electric scooters on the sidewalks. Believing it to be safer to operate the scooter on the sidewalk as opposed to the city streets, Areche too rode the electric scooter on the sidewalk. The next day, while Areche operated the electric scooter on a sidewalk near the U.S. Post Office building on South Street, he hit a large hole in the sidewalk that was filled with gravel. The impact of hitting the hole in the sidewalk threw Areche from the scooter, and he was injured.

[5] At the time of Areche's accident, the Indianapolis Revised Code ("City Code") prohibited the operation of electric scooters on sidewalks via an ordinance that provides:

---

[1] We glean the facts of this case from Areche's complaint and his affidavit submitted in response to the State's motion to dismiss.

(a) It shall be unlawful for any person to operate an electric foot scooter[2] on:

(1) A sidewalk,

(2) A greenway, or

(3) Any pedestrian or multimodal path that is paved or unpaved in the city.

(b) Multimodal path, for purposes of this chapter, shall not mean a path set aside for the exclusive use of bicycles.

City Code § 441-320.1 ("the Scooter Ordinance").

On June 21, 2024, Areche filed a negligence claim against the City and other defendants. The City subsequently moved to dismiss Areche's complaint under Trial Rules 12(B)(6) and 12(B)(1). In its motion, the City claimed that Areche was negligent per se for violating the Scooter Ordinance, that the City was exempt from the Comparative Fault Act, and that Areche could, therefore, not recover from the City based on the common-law doctrine of contributory negligence. Areche responded to the motion to dismiss and submitted his own affidavit as evidence in opposition to the City's motion. Following Areche's

---

[2] The City Code defines an "electric foot scooter" as a device:

(1) Weighing not more than one hundred (100) pounds;

(2) Designed to travel on not more than three (3) wheels in contact with the ground;

(3) With handlebars and a floorboard that the rider uses to stand on the device during operation; and

(4) Powered by an electric motor that is capable of powering the device with or without human propulsion at a speed not more than twenty (20) miles per hour on a paved level surface.

City Code § 431-101. It is undisputed that the electric scooter that Areche operated meets this definition.

reply, the trial court converted the motion to dismiss into a motion for summary judgment. *See* Ind. Trial Rule 12(B).

[7] On October 24, 2024, the trial court issued an order granting summary judgment in favor of the City. This order provides in relevant part:

> The Court [] finds that plaintiff Eliezer Areche's claims are barred by his contributory negligence. The evidence before the Court is that Areche's accident occurred when he drove an electric scooter on a city sidewalk and struck a "large hole filled with gravel in the sidewalk." At the time of Areche's accident, the [City Code] made it illegal to operate an electric foot scooter on a city sidewalk.
>
> . . . In driving an electric scooter on a city sidewalk, Areche's negligence constitutes negligence per se and bars his claim. Areche's accident would not have occurred if the requirements of the municipal code had been observed—specifically, Areche and the scooter could not have been where the pothole was located if he had not been violating the law and driving the scooter on the sidewalk. Areche was only exposed to the pothole because he was driving in a location he was not allowed. Because this negligence per se was a proximate cause of the accident resulting in his injury, Areche was guilty of contributory negligence as a matter of law and his claim is barred.

Appellant's App. Vol. II pp. 15-16 (citations omitted).[3] Pursuant to Indiana Trial Rule 54(B), the trial court also found that there was "no just reason for

---

[3] Areche's complaint named as defendants both the City itself and the City's Department of Public Works ("DPW"). The trial court found that DPW was not a proper party because DPW is merely a subdivision of the City government. Areche appropriately conceded at oral argument that the trial court's ruling regarding DPW's status was correct. Oral Argument at 37:40. *See City of Peru v. Lewis*, 950 N.E.2d 1, 4 (Ind. Ct. App. 2011) (holding that a department of a city is merely the vehicle through which the city government fulfills its functions, not a legal entity itself, and thus cannot be sued or brought into court), *trans. denied*. We also note

delay and direct[ed] the Clerk to enter final judgment in favor" of the City. Areche now appeals.[4]

# Discussion and Decision

## I. Summary Judgment Standard of Review

Areche appeals the trial court's grant of summary judgment in favor of the City. Pursuant to Trial Rule 56(C), the party moving for summary judgment "is entitled to summary judgment only if the evidence it designates in support of its motion 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 684-85 (Ind. 2024) (quoting Ind. Trial Rule 56(C)). The purpose of summary judgment is to withdraw issues from the jury only when there are no factual issues for the jury to decide. *Id*. at 685. The summary judgment movant bears the burden of making a prima facie showing that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020). The burden then shifts to the non-moving party, who must show the existence of a genuine issue of material fact to avoid summary judgment. *Id*.

---

that Areche's initial complaint the United States Postal Service as a defendant, but his amended complaint did not name the Postal Service as a defendant. Thus, the Postal Service is not an active party in this case.

[4] We held oral argument in this case on May 9, 2025, at the St. Joseph County Courthouse. We extend our thanks to the Leadership Development Academy of the Indiana State Bar Association, who hosted the event, and we commend counsel for the quality of their oral and written advocacy.

On appeal, we review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). We resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Burton*, 140 N.E.3d at 851. "We limit our review to the materials designated at the trial level." *Gunderson v. Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

"'[S]ummary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact.'" *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 261-62 (Ind. 2014) (quoting *Est. of Mintz v. Conn. Gen. Life Ins. Co.*, 905 N.E.2d 994, 999 (Ind. 2009)). Nevertheless, "if only one reasonable inference or conclusion can be drawn from the evidence, the question of contributory negligence is a question of law for the court." *Id.* (citing *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 911 (Ind. 2009)).

## II. Negligence, Contributory Negligence, and Negligence Per Se

### A. General Negligence

To prevail on a claim of negligence, a plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

## B. Contributory Negligence

[12] Under the common-law defense of contributory negligence, even the slightest negligence by the plaintiff barred the plaintiff from recovery. *McSwane*, 916 N.E.2d at 911.[5] To lessen the harsh effect of contributory negligence, our General Assembly enacted the Comparative Fault Act in 1986. *Clayton v. Morgan Cnty. Sheriff's Dep't*, 95 N.E.3d 189, 192 (Ind. Ct. App. 2018) (quoting *McSwane*, 916 N.E.2d at 911). Under the Comparative Fault Act, a plaintiff whose own negligence contributes as much as 49 percent to her injury may recover from a defendant whose acts provided 51 percent. *McSwane*, 916 N.E.2d at 911. "The basic point of [the Comparative Fault Act] is that a defendant should be required to compensate an injured party only in proportion to the defendant's fault." *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005).

[13] When adopting the Comparative Fault Act, however, our General Assembly excluded certain claims from this alteration, including tort claims against governmental entities, such as the City. *McSwane*, 916 N.E.2d at 911 (citing Ind. Code § 34-51-2-2 (providing that the Comparative Fault Act "does not apply in any manner to tort claims against governmental entities or public

---

[5] "In order to constitute a bar to recovery, contributory negligence must be a proximate cause of the injury," that is "[t]he contributory negligence must unite in producing the injury and, thus, be 'simultaneous and co-operating with the fault of the defendant . . . (and) enter into the creation of the cause of action.'" *Sawlani v. Mills*, 830 N.E.2d 932, 942 (Ind. Ct. App. 2005) (quoting *Harris v. Cacdac*, 512 N.E.2d 1138, 1139-40 (Ind. Ct. App. 1987), *trans. denied*); *accord Cavens v. Zaberdac*, 849 N.E.2d 526, 529 (Ind. 2006). Areche conceded at oral argument that his violation of the Scooter Ordinance was a proximate cause of his injuries. Oral Argument at 37:00.

employees.")). Thus, for claims against governmental entities, any amount of negligence by the plaintiff still acts as a complete bar to recovery under the theory of contributory negligence. *McSwane*, 916 N.E.2d at 911.

### C. Negligence Per Se

[14]　Negligence per se consists of the "unexcused violation of a statute or ordinance" if the statute or ordinance "(1) 'protects the class of persons in which the plaintiff is included' and (2) 'protects against the type of harm [that] has occurred as a result of the violation.'" *Stachowski v. Est. of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (quoting *City of Fort Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015)). A "finding of negligence per se . . . represents a judicial acceptance of 'the legislative judgment that acts in violation of the statute constitute unreasonable conduct.'" *Id.* at 544-45 (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003)).

[15]　The City claims that, by violating the Scooter Ordinance, Areche was negligent per se and is, therefore, barred from recovery under the defense of contributory negligence. Areche does not deny that he violated the Scooter Ordinance, nor does he claim that his violation was excused. Instead, he claims that his violation of the Scooter Ordinance did not constitute negligence per se because the ordinance does not protect the class of persons in which Areche is included (scooter operators) and does not protect against the type of harm that resulted (a single-scooter accident). If it does, then he is barred from recovering from the City under a theory of contributory negligence. If not, then his claim against the City may proceed.

### III. Areche's violation of the Scooter Ordinance constituted negligence per se and his claim against the City is barred as a result of his contributory negligence.

Areche argues that the trial court erred in granting summary judgment for the City for three primary reasons: (1) Areche owed no preexisting duty to himself; (2) Areche is not in the class of persons the Scooter Ordinance is meant to protect; and (3) the injury Areche suffered is not the type of harm the Scooter Ordinance is intended to prevent. We disagree with each of these arguments.

### A. Areche owed a duty to himself.

Areche correctly notes that the doctrine of negligence per se cannot create a duty; instead, it can apply only when there is a preexisting, common-law duty of reasonable care. *See Stachowski*, 95 N.E.3d at 544. Areche argues that "there was not a duty of care to others that Areche could have breached as he himself was the injured party." Appellant's Br. p. 15. Areche argues that he did not, and could not, owe a duty of reasonable care to himself. Areche is mistaken.

All plaintiffs owe a duty of reasonable care to themselves. In *Brown v. City of Indianapolis*, we noted that the plaintiff "failed to exercise, **for his own safety**, that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would have exercised." 113 N.E.3d 244, 252 (Ind. Ct. App. 2018) (emphasis added); *see also Smith v. Hull*, 659 N.E.2d 185, 193 (Ind. Ct. App. 1995) (noting that a plaintiff owes a duty to himself while under a physician's care) (Sullivan, J., concurring), *trans. denied*. Indeed, if a plaintiff owed no duty to themselves, then he or she could never be contributorily

negligent. *See McSwane*, 916 N.E.2d at 911 ("A court should find a plaintiff contributorily negligent if her conduct falls below the standard to which she is required to conform **for her own protection**.") (citing *Faulk v. Nw. Radiologists, P.C.*, 751 N.E.2d 233, 239 (Ind. Ct. App. 2001)) (emphasis added).

### B. The class of persons the Scooter Ordinance protects.

[19] To determine whether the unexcused violation of an ordinance constitutes negligence per se, we must first determine whether the ordinance "protects the class of persons in which the plaintiff is included." *Stachowski*, 95 N.E.3d at 544. Areche claims that the Scooter Ordinance does not protect the class of persons in which he is included—electric scooter operators.[6]

[20] To determine the class of persons the Scooter Ordinance protects, we first consider the plain language of the Scooter Ordinance itself. In *Serbon v. City of East Chicago*, we noted that:

> our goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes. The best evidence of the intent of the legislature is the language of the statute, and we will give the words of the statute their plain and ordinary meaning.

---

[6] Areche notes in his reply brief that the trial court did not apply the two-part test to determine whether Areche's violation of the Scooter Ordinance was negligence per se. Areche, therefore, argues that the trial court must have believed that **any** violation of a statute or ordinance constituted negligence per se. We disagree. We presume that trial courts know and follow the law, and we overlook this presumption only if the trial court's order leads us to conclude that an unjustifiable risk exists that the trial court did not follow the applicable law. *In re Paternity of A.R.S.*, 198 N.E.3d 423, 431 (Ind. Ct. App. 2022). There is no such unjustifiable risk here. Moreover, the trial court's order on summary judgment is not binding on us. *In re Supervised Est. of Kent*, 99 N.E.3d 634, 637 (Ind. 2018). Instead, the issue before us is one of pure law that we review de novo. *Id*. Thus, regardless of whether the trial court engaged in this analysis, we do so on appeal as part of our de novo review.

> Accordingly, if the language of the statute is clear and
> unambiguous, it is not subject to judicial interpretation.

194 N.E.3d 84, 95-96 (Ind. Ct. App. 2022) (citations omitted).

[21]    As noted above, the Scooter Ordinance provides:

> (a) It shall be unlawful for any person to operate an electric foot
> scooter on:
>
>> (1) A sidewalk,[7]
>>
>> (2) A greenway,[8] or
>>
>> (3) Any pedestrian or multimodal path that is paved or
>> unpaved in the city.
>
> (b) Multimodal path, for purposes of this chapter, shall not mean
> a path set aside for the exclusive use of bicycles.

City Code § 441-320.1.

[22]    In arguing that the Ordinance does not protect electric scooter operators,
Areche notes that City Code Section 441-371 prohibits pedestrians from using
bicycle lanes and paths unless there is specific signage stating otherwise.[9]

---

[7] The City Code defines "sidewalk" as "includ[ing] that portion of a street between the curblines, or the lateral lines of a roadway, and the adjacent property lines, either used and intended for the use of pedestrians or so designated, and which is either unpaved or paved." City Code § 441-101.

[8] The City Code defines "greenway" as "a linear open space which is intended for the use of pedestrians and non-motorized devices, and which facilitates transportation to neighborhoods and other community destinations." City Code § 441-101.

[9] This ordinance provides:

> (a) Bicycle paths and lanes shall be used exclusively for the operation of bicycles unless signage specifies joint use with pedestrians.

Areche argues that the Scooter Ordinance permits the operation of electric scooters in bicycle paths and lanes. Areche, therefore, concludes that the intent of prohibiting electric scooters from travelling in the same spaces occupied by pedestrians is to protect pedestrians, not the electric scooter operators. We disagree.

First, the Scooter Ordinance does not affirmatively allow electric scooters to be operated in bicycle paths and lanes. But even assuming that the Scooter Ordinance does permit electric scooter operation in bicycle lanes, this does not mean that the Scooter Ordinance protects only pedestrians. Indeed, the plain language of the Scooter Ordinance prohibits the operation of electric scooters on sidewalks, greenways, and pedestrian and multimodal paths. By prohibiting all electric scooters on sidewalks and similar paths, common sense tells us that the primary goal of the Scooter Ordinance is to prevent injuries to both electric scooter operators and pedestrians, and this protects against foreseeable accidents. Accordingly, we conclude that the Scooter Ordinance protects both pedestrians and electric scooter operators, and Areche is within the class of persons the Scooter Ordinance protects.

Areche also argues that the legislative history of the Scooter Ordinance supports his claim. He notes that the Scooter Ordinance was enacted shortly after the

(b) With the exception of a moped being operated exclusively with human muscular power, no person shall operate any other conveyance in a designated bicycle path or lane.

(c) A person may operate a motor vehicle upon a bicycle lane for the limited purpose of making a turn, entering or leaving an alley, private road, or driveway.

City Code § 411-371.

General Assembly removed electric scooters from the definition of a "motorized vehicle" in the Indiana Code, thereby removing the prohibition against operating of electric scooters on sidewalks. Because the City quickly adopted the Scooter Ordinance after this statutory change, Areche claims that the City obviously intended to protect pedestrians. We conclude, however, that the plain language of the Scooter Ordinance protects both pedestrians and scooter operators.[10]

## C. *The type of harm suffered.*

[25] To determine whether the unexcused violation of an ordinance constitutes negligence per se, we must also determine whether the statute or ordinance "protects against the type of harm [that] has occurred as a result of the violation." *Stachowski*, 95 N.E.3d at 544. Areche argues that his injuries are not included in the type of harm that the Scooter Ordinance protects against. Instead, Areche contends that the type of harm the Scooter Ordinance protects against is collisions between electric scooters and pedestrians. A single electric scooter operator hitting a pothole in a sidewalk and injuring himself, Areche contends, is not the type of harm the Scooter Ordinance is meant to prevent. This argument defies logic.

---

[10] Areche also includes in his brief a statement from City-County Councilman Zach Adamson, which he claims supports his interpretation of the Scooter Ordinance. This statement was not included in the material before the trial court. Moreover, our Supreme Court has long cautioned that, when interpreting statutes (and, by implication ordinances), "'we do not impute the opinions of one legislator, even a bill's sponsor, to the entire legislature unless those views find statutory expression.'" *Util. Ctr., Inc. v. City of Ft. Wayne*, 868 N.E.2d 453, 459 (Ind. 2007) (quoting *Woman's Choice-East Side Women's Clinic v. Newman*, 671 N.E.2d 104, 110 (Ind. 1996)).

[26]    The Scooter Ordinance clearly and unambiguously prohibits electric scooters from being operated on sidewalks.  This protects against harm suffered by **anyone** who might be at risk by operating electric scooters on sidewalks—both pedestrians and electric scooter operators. The truth of this was borne out in the present case—had Areche not been illegally operating his electric scooter on a sidewalk, he would not have hit the pothole in the sidewalk, and he would not have been injured.  Areche is misguided in arguing that, if the City intended to protect non-pedestrians, it would have also prohibited bicycles from being operated on sidewalks.  This is immaterial to our analysis because the City did explicitly prohibit electric scooters from being operated on sidewalks, which protects scooter operators and pedestrians alike.[11]

## Conclusion

[27]    Areche violated the Scooter Ordinance by operating an electric scooter on the sidewalk, and Areche does not argue that this violation was somehow excused.

---

[11] In his reply brief, Areche argues that it is illogical to conclude that the Scooter Ordinance intended to protect electric scooter operators because, if the City wanted to protect electric scooter operators from potholes, it would have banned electric scooters from city streets as well, which suffer from no lack of potholes.  But potholes are not the only obstacles that might be present on sidewalks.  Such obstacles include pedestrians and any other object that may commonly be found on sidewalks, such as signs, benches, and stands.

In his separate opinion concurring in part and dissenting in part, Judge Scheele agrees with our conclusion that the Scooter Ordinance protects the class of persons in which Areche is included, but he disagrees that an accident caused by driving an electric scooter into a pothole on a sidewalk is the type of harm the Scooter Ordinance protects against.  But the relevant question is not about potholes or whether potholes are more likely to be encountered on a sidewalk or on a street.  It is instead about the type of harm the Scooter Ordinance protects against, and this includes bodily injury caused by the conditions of and activities occurring on sidewalks.  This is exactly the type of harm that occurred here.  Moreover, unlike sidewalks, where there are no directional traffic rules, streets have well-established safety rules and directional flows of traffic.  The fact that potholes also exist on streets is, accordingly, irrelevant to the question of whether the Scooter Ordinance protects against the type of harm that occurred here.

The Scooter Ordinance protects the class of persons in which Areche is included—anyone on the sidewalk, including electric scooter operators—and protects against the type of harm that Areche suffered as a result of his violation of the Scooter Ordinance—injuries caused by riding electric scooters on sidewalks. Areche's admitted violation of the Scooter Ordinance, therefore, constituted negligence per se. And because Areche was negligent per se, he was at least slightly negligent in the operation of his electric scooter. Because negligence claims against governmental entities are specifically exempted from the Comparative Fault Act, Areche's claim is barred by the common-law defense of contributory negligence. Accordingly, we affirm the trial court's grant of summary judgment in favor of the City.

[28] Affirmed.

Judge DeBoer concurs.
Judge Scheele dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Michael E. Simmons
Hannah K. Brady
Georgianna Tutwiler
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Patrick P. Devine
Jennifer Kalas
Hinshaw & Culbertson LLP
Schererville, Indiana

Brandon R. Newhart
City of Indianapolis

Indianapolis, Indiana

Catherine Basque Weiler
Hinshaw & Culbertson LLP
Chicago, Illinois

**Scheele, Judge, dissenting.**

[29]    I agree with the majority's holding that Areche owed a duty to himself to act reasonably, and that Indianapolis Revised Code § 441-320.1, the Scooter Ordinance, protects both electric scooter operators ("scooterists") and pedestrians. I respectfully dissent, however, from the majority's conclusion that the Scooter Ordinance protects against the type of harm Areche suffered: hitting a large hole with gravel while operating his electric scooter on the sidewalk. The majority concludes the Scooter Ordinance protects against injuries caused by the operation of an electric scooter on the sidewalk. I write separately to note the majority's holding applies the Scooter Ordinance too broadly and fails to account for circumstances, like those presented in this case, where the harm falls outside the type of harm contemplated by the ordinance.

[30]    I would hold the Scooter Ordinance was not intended to protect scooterists like Areche, that is, those scooterists who are harmed by a hazard like the large hole filled with gravel encountered in this case. Areche claims the City of Indianapolis intended to protect against one type of harm: collisions between pedestrians and scooterists. Areche argues the City of Indianapolis, under the Scooter Ordinance, did not intend to protect scooterists from defects like large

holes, since they can also be found in streets. The majority concludes that this defect is just one of many potential obstacles a scooterist may encounter on a sidewalk, including "pedestrians . . . signs, benches, and stands." *Areche v. Indianapolis Dep't of Pub. Works, et al.*, -- N.E.3d --, -- n.11 (Ind. Ct. App. 2025). I see a key distinction in the majority's list of potential obstacles: pedestrians, signs, benches, and stands are generally only encountered on sidewalks, whereas a large hole is uncommon and a scooterist is just as likely to encounter one on a street, where scooterists are relegated, or on a sidewalk. Accordingly, I do not believe a large hole on the sidewalk is among the foreseeable obstacles that the City of Indianapolis intended to protect scooterists from by prohibiting scooterists from operating electric scooters on a sidewalk. I would hold, therefore, that the Scooter Ordinance does not protect from harm resulting from collisions with large holes in the sidewalk.

[31] Because I would hold that the Scooter Ordinance does not protect against the type of harm at issue in this case, I would hold that negligence per se does not apply. *See Stachowski v. Est. of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018). Thus, I would reverse the trial court's order granting summary judgment for the defendants.[12] For the aforementioned reasons, I respectfully dissent.

---

[12] I agree with the majority that the City's Department of Public Works is not a proper party and would affirm the trial court's order granting summary judgment in favor of this defendant.